Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9267 | **DATE** | 6/30/2004 |
| **CASE TITLE** | Pulver vs. TriWestern Metals | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Judgment on the Pleadings

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's Motion for Judgment on the Pleadings, brought pursuant to Federal Rule of Civil Procedure 12(c) [13-1] is denied. See reverse.

(11) ■ [For further detail see order attached to the original minute order.]

| X | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | 18 |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice |
| | | | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES A PULVER, ) | |
| ) | No. 03 C 9267 |
| Plaintiff, ) | |
| ) | |
| v. ) | Honorable Charles R. Norgle |
| ) | |
| TRI WESTERN METALS, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Defendant's Motion for Judgment on the Pleadings, brought pursuant to Federal Rule of Civil Procedure 12(c) [13-1]. For the following reasons, the motion is denied.

## I. BACKGROUND

Plaintiff, James A. Pulver ("Pulver"), was born on April 26, 1946. Pulver, a union member, was employed as a Maintenance Worker with Defendant, TriWestern Metals ("TriWestern"), until he was placed on permanent lay-off status in April of 2003. On May 7, 2003, Pulver filed a charge of discrimination with the Illinois Department of Human Rights, alleging simply that he had been discriminated against on the basis of his age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). On December 23, 2003, after having received his Notice of Right to Sue, Pulver filed the Complaint in this case.

In his Complaint, Pulver, who is proceeding *pro se*, alleges that he has been discriminated against on the basis of his age in violation of the ADEA. See Pl.'s Compl. ¶¶ 1-2. The entirety of Pulver's Complaint, relating to his claim, provides:

1. I, James A. Pulver: Plaintiff: am filling [*sic.*] this suit against TriWestern Metals: Defendant: for what I believe is a clear violation of discrimination against my



      employment. Age discrimination.
2. A federal law passed in 1967 prohibits age discrimination.
3. The company, TriWestern Metals: Defendant: is also in clear violation of a signed union contract, prohibiting age discrimination.
4. There are two younger maintenance men, who are also junior on the seniority list, working.

Id. ¶¶ 1-4.

TriWestern has responded to the Complaint with the instant Motion for Judgment on the Pleadings, brought pursuant to Federal Rule of Civil Procedure 12(c), which is fully briefed and before the court.

## II. ANALYSIS

### *A. Standard of Decision*

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A Rule 12(c) motion challenges the legal sufficiency of a party's pleadings. See, e.g., United States v. Wood, 925 F.2d 1580, 1581-82 (7th Cir. 1991). A Rule 12(c) motion may be used to raise various Rule 12(b) defenses regarding procedural defects, such as lack of subject matter jurisdiction, in which case courts apply the same standard applicable to the corresponding 12(b) motion. See Alexander v. City of Chicago, 994 F.2d 333, 336 (7th Cir. 1993).

In deciding a Rule 12(c) motion, the court must view all facts in a light most favorable to the non-moving party, and may grant the motion only if "it is beyond doubt that the non-movant can plead no facts that would support his claim for relief." Wood, 925 F.2d at 1581. The court may not look beyond the pleadings; however, the court may take into consideration documents incorporated by reference to the pleadings if they are referred to in plaintiff's complaint and are central to his

claim. See, e.g., Venture Associates v. Zenith Data Systems, 987 F.2d 429, 431 (7th Cir.1993); see also Fed.R.Civ.P. 10(c).

## *B. TriWestern's Motion*

According to TriWestern, Pulver's claim is premised upon the assertion that his lay-off was in violation of a seniority provision contained in the collective bargaining agreement between his union and TriWestern, and by bringing this lawsuit he is seeking to enforce the terms of the collective bargaining agreement. In short, TriWestern claims that Pulver's references to the collective bargaining agreement convert this controversy into an unfair labor practice charge, which Congress has granted exclusive jurisdiction over to the National Labor Relations Board. Thus, TriWestern contends that Pulver's claim is preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("Section 301") and must be dismissed.

TriWestern contends that Pulver's Complaint should be dismissed because Section 301 preempts his ADEA claim, and grounds its motion in a discussion of general federal preemption of state law. However, "[o]ne federal statute does not preempt another." Randolph v. IMBS, Inc., 368 F.3d 726, 730 (7th Cir. 2004) (citing Baker v. IBP, Inc., 357 F.3d 685, 688 (7th Cir. 2004)). Pulver has based subject matter jurisdiction solely on the ADEA, and thus, TriWestern's motion misconstrues Pulver's Complaint and misses the mark.

Further, TriWestern's motion contains no discussion or citation to authority on the discrete issue of the effect of Section 301 on a claim under the ADEA; however, that silence can be attributed to the fact that neither the Supreme Court nor the Seventh Circuit has directly addressed that discrete issue as framed. In a footnote, TriWestern states: "While Section 301 specifically preempts state claims governed by the parties' collective bargaining agreement, federal claims governed by the

3

parties' collective bargaining agreement should be similarly preempted, if not precluded by Section 301." Def.'s Mot. for Judg. on the Pleadings, at 3 n.2. However, the issue before the court is not a general preemption issue.

Yet, this statement does raise an issue of the court's jurisdiction to decide this controversy, and the federal courts are "always obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction." Tylka v. Gerber Prods. Co., 211 F.3d 445, 447-48 (7th Cir. 2000) (quotation and internal marks omitted). "The federal courts are courts of limited jurisdiction [and] [w]e have no authority to adjudicate cases outside our purview." Int'l Union of Oper. Eng'rs, Local 150, AFL-CIO v. Rabine, 161 F.3d 427, 430 (7th Cir. 1998). Thus, the court will address whether Pulver's claims are, in essence, unfair labor practices which are within the exclusive jurisdiction of the National Labor Relations Board ("NLRB").

### *C. Whether Pulver's ADEA Claims are, in essence, Unfair Labor Practices which are within the Exclusive Jurisdiction of the National Labor Relations Board*

What TriWestern refers to as "preemption" is an argument that, based on San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959) and its progeny, claims of unfair labor practices belong to the primary jurisdiction of the National Labor Relations Board ("NLRB"), as envisioned by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 153. In Garmon, the Supreme Court articulated a general rule to determine the parameters of the NLRB's primary jurisdiction and the NLRA's preemptive effect, stating:

> When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

4

Garmon, 359 U.S. at 245. Based on the Supremacy Clause of the United States Constitution, Garmon was primarily concerned with the tension between federal and state labor relations, and what is commonly referred to as Garmon preemption reflects a concern with "delimiting areas of conduct which must be free from state regulation if national policy is to be left unhampered." Id. at 246.

"The intersection of, or potential conflict between, *federal* statutes does not implicate the constitutional concerns underlying Garmon preemption." United States v. Palumbo Bros., Inc., 145 F.3d 850, 862 (7th Cir. 1998) (holding that RICO indictments were not preempted by Section 301, even assuming that the alleged underlying acts constituted unfair labor practices) (emphasis in original). "Applied to claims in federal court, and arising under federal law, *Garmon* has nothing to do with either preemption or subject-matter jurisdiction." Baker v. IBP, Inc., 357 F.3d 685, 688 (7th Cir. 2004). In the context of the interplay between federal statutes, what is commonly referred to as Garmon preemption "is a rule of primary jurisdiction, allocating to an administrative agency the first crack at certain matters." Id. (citing Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 49-50 (1998)).

Thus, the issue presented is whether the NLRB's primary jurisdiction over unfair labor practices, as envisioned in the NLRA, is in conflict with a claim filed in a federal district court arising under the ADEA. The issue of whether another federal statute conflicts with the NLRA was addressed in Connell Construction Co. v. Plumber and Steamfitter Local Union No. 100, 421 U.S. 616 (1975). In Connell, the Court considered whether a federal court had jurisdiction to hear a case under the Sherman Antitrust Act when the alleged conduct could also form the basis for a claim under the NLRA. See Connell, 421 U.S. at 620-21. The Court determined that the statutory history did not suggest that Congress intended the NLRA to be the exclusive remedy for acts that arguably

could be violations of the NLRA. See id. at 620-21. The Court rejected the claim that the NLRB has exclusive jurisdiction over matters arising under various federal laws that may also fall within the ambit of the NLRA, holding that "the federal courts may decide labor law questions that emerge as collateral issues in suits brought under independent federal remedies, including the antitrust laws." Id. at 626. The Court stated that "where there is an independent federal remedy that is consistent with the NLRA, the parties may have a choice of federal remedies." Id. at 636 n.17 (citing Vaca v. Sipes, 386 U.S. 171, 176-88 (1967)); see also Marriot Corp. v. Great America Services Trade Council, AFL-CIO, 552 F.2d 176, 180-81 (7th Cir. 1977) (relying on Connell to hold that a claim for Lanham Act violation was not preempted by Section 301).

The Supreme Court has repeatedly rejected the claim that the NLRB has exclusive jurisdiction over matters arising under various federal laws that may also fall within the ambit of the NLRA. For example, in Breininger v. Sheet Metal Workers Int'l. Ass'n. Local Union No. 6, the Court held that a federal court had jurisdiction to hear a union member's fair representation claim, which is founded solely on substantive federal law, even though the union's breach of their duty of fair representation might have violated § 8 of the NLRA. 493 U.S. 67, 78-80 (1989). The Breininger Court recognized that sections 7 and 8 of the NLRA protect rights associated with collective bargaining, while a fair representation claim "is an essential means of enforcing fully the important principle that 'no individual union member may suffer invidious, hostile treatment at the hands of the majority of his coworkers.'" Id. at 79 (quoting Motor Coach Employees v. Lockridge, 403 U.S. 274, 301 (1971)).

Turning specifically to the ADEA, in Britt v. Grocers Supply Co., Inc., the Fifth Circuit, in a matter of first impression, addressed the issue of whether federal courts have jurisdiction over age

discrimination claims that encompass conduct that is arguably covered by the NLRA. 978 F.2d 1441, 1445-49 (5th Cir. 1992). The Britt court found that it had jurisdiction to hear the matter. Specifically, the Britt court stated: "[W]e hold that, to the extent the age discrimination claims encompass conduct that is arguably covered by the National Labor Relations Act, the ADEA governs the prosecution of those claims and not the NLRA." Id. In its analysis, the Britt court relied on the "collateral issue" exception to the NLRB's primary jurisdiction clarified in Connell, finding that, "[a]s an independent federal remedy, the ADEA falls under this exception." Id. at 1446.

In the present case, Pulver has filed an ADEA claim, and not, as recharcterized by TriWestern, an unfair labor practices charge. Pulver's claim does not hinge upon a determination that an unfair labor practice has occurred, and as such, is beyond the primary jurisdiction of the NLRB. Similarly, Pulver's claims are not governed by the terms of the collective bargaining agreement, but rather by the ADEA. The distillate of Pulver's claim is that TriWestern has violated the ADEA by laying him off and retaining two younger employees, which does not require any interpretation of the seniority provisions in the collective bargaining agreement between Pulver's union and TriWestern. While Pulver's lay-off may have given rise to an unfair labor practice charge,[1] the fact remains that he may independently prove a violation of the ADEA without the court having to resort to the collective bargaining agreement, and the seniority provisions contained therein, or the NLRA, and other potentially applicable federal labor laws. Pulver's claim can be resolved through an analysis of the provisions of the ADEA and the case law interpreting it, an ultimate resolution to which the court expresses no opinion at this time.

---

[1] The court makes no decision as to whether Pulver could have brought an unfair labor practices charge.

7

Further, the primary jurisdiction of the NLRB to impose remedial sanctions for unfair labor practices does not mean that employers are immune from suits in federal courts seeking to determine whether violations of the ADEA have occurred, even though the same set of facts may give rise to both a unfair labor practices charge and an ADEA claim. "The preemption doctrine . . . has never been rigidly applied to cases where it could not be fairly inferred that Congress intended exclusive jurisdiction to lie with the NLRB." Vaca, 386 U.S. at 179. The law surrounding the ADEA has developed within the federal courts, and "as these matters are not normally within the Board's unfair labor practice jurisdiction, it can be doubted whether the Board brings substantially greater expertise to bear on these problems than do the courts." Id. at 181. The court cannot fairly infer that Congress intended the NLRB to have exclusive jurisdiction over an action for a violation of the ADEA when brought by a covered individual who is incidentally a union employee. To find such an intent would be to find that Congress intended to create two classes of litigants under the ADEA: union members and non-union members. "To state the proposition demonstrates its incongruity." Marriot Corp, 552 F.2d at 181. The fact that the conduct alleged in Pulver's Complaint may have formed the basis for an unfair labor practices charge based on the collective bargaining agreement does not eviscerate the rights granted to him by Congress under the ADEA. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 48-50 (1974) (holding that union employee's statutory right to trial *de novo* under Title VII of the Civil Rights Act was not foreclosed by prior submission of claim to final arbitration under the nondiscrimination clause of a collective bargaining agreement, as "[t]he distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence").

Such a finding also comports with the well-established canon of statutory construction that

"[a]bsent a clearly expressed intention that Congress intended one federal statute to preempt another, courts must regard each as effective and give them simultaneous effect." Palumbo Bros., 145 F.3d at 865 (citing Morton v. Mancari, 417 U.S. 535, 551 (1974)). The NLRA, specifically sections 7 and 8, protects rights associated with collective bargaining, while the ADEA protects individuals against age discrimination in employment. The two federal statutes have differing goals. Thus, the NLRA and the ADEA can be easily harmonized by giving effect to both within their respective spheres.

In sum, liberally construing Pulver's *pro se* Complaint, the court cannot accept TriWestern's reading of the Complaint. Pulver's Complaint simply alleges that he has been discriminated against on the basis of his age in violation of the ADEA. The simple incantation of the term, "union contract," does not talismanically turn an allegation of age discrimination into unfair labor practices charge. Further, the ADEA created an independent federal remedy which may be vindicated in the federal district courts regardless of whether the conduct at issue may also give rise to an unfair labor practices charge. Therefore, the court holds that the NLRB's primary jurisdiction over unfair labor practices, as envisioned in the NLRA, is not in conflict with a claim filed in a federal district court arising under the ADEA.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings, brought pursuant to Federal Rule of Civil Procedure 12(c), is denied.

IT IS SO ORDERED

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 6/30/04